Wesco Supply Company, Appellant, v. The Incorporated Town of Allerton, Iowa, Appellee.

Sales: PASSING OF TITLE. As a general rule the title to personalty
1 passes upon delivery and acceptance, even though the purchaser has the option upon inspection to rescind and return the property; but where anything remains to be done by the parties, either by way of identification, or to its kind or quality, or the sale is upon approval or test the title does not pass until the approval is given or the test made.

Same: INTENT OF PARTIES; EVIDENCE. The real question in deter-

mining whether title to personalty has passed is the intent of the parties, to be gathered from their contract, acts and conduct with reference to the transaction; and this is generally a question of fact for the jury. In the instant case the evidence is held to justify a finding that it was the intent of the parties that title should not pass until a complete test was made to ascertain whether it was of the kind bargained for, and that this condition was not waived.

*Appeal from Wayne District Court.*—HON. H. K. EVANS, Judge.

MONDAY, OCTOBER 21, 1912.

ACTION at law to recover for goods sold and delivered. Defendant admitted purchasing the goods, but denied acceptance or delivery. The case was tried to the court without a jury, resulting in a judgment for defendant, and plaintiff appeals.—*Affirmed.*

*Poston & Murrow,* for appellant.

*Miles & Steele,* for appellee.

DEEMER, J.—Desirous of supplying the defendant town with an electric light plant, the town council entered into a contract with plaintiff for the purchase of a producer gas engine with its equipment, a fifty kilowat generator with proper appliances, and the necessary poles and material for distributing the light. By the terms of the agreement: "Successful bidders for generators shall, at their own expense, furnish all apparatus necessary for the complete testing of such machines, and make the necessary test under the direction of the engineers for the town of Allerton, Iowa, to see that the performance of each machine is according to the specifications of the American Institute of Electrical Engineers, revised June 7, 1907, and approved June 21, 1907. . . . Notice is hereby given to all

bidders that the following method of payment under these specifications on material contracts will be observed: Fifty percent of the contract price will be paid to bidder as soon as the material has been received in good condition on cars Allerton, Iowa, and the remaining fifty percent will be paid as soon as the material can be erected and tested out." As to the generator the contract also provided that: "The acceptance of this machine on the part of the town of Allerton is solely on condition that after having been tested, the machine is found to fully meet all conditions of the temperature test or it shall be removed by the town and will be at the order of the bidder and no suit or action shall be maintained against the town of Allerton by reason of the rejection of the machine, should it fail to meet the conditions specified."

The materials called for by the contract were supplied and put in place about September 1, 1910, and shortly thereafter an attempt was made to test it; but, on account of a hot bearing in the crank of the engine, it was not completed. Upon this partial test a leak was found in the generator, and, as defendant used the machine after this partial test, this leak kept increasing. As the test was partial and unsatisfactory, plaintiff's representatives agreed to a further test in the future, and to come back on defendant's request. On September 29, 1910, the town clerk wrote plaintiff the following letter: "Allerton, Iowa, Sept. 29, 1910. Wesco Supply Co., St. Louis, Mo.—Gents: The final test of machinery for light plant will be made 3d and 4th of October, please have your man here Monday, Oct. 3d to see test. If machine is all right your money and deposit check will be sent you on proof of test. Yours truly, S. F. Shields, Clerk." On the night of October 3d, and before any final test was made, a fire occurred in the plant, and the generator was destroyed. Defendant had not paid for the generator, and this action is to recover the purchase price thereof.

The ultimate question is: Who should bear the loss of the destruction of the generator by the fire? Answer to this depends upon a solution as to where the title to the property was at that time. This is a mixed question of law and fact, depending in its last analysis upon the intention of the parties. Some rules of law are also involved.

As a general rule title to personal property does not pass so long as anything remains to be done by the parties. *Sempel v. Lumber Co.*, 142 Iowa, 586. The thing undone

1. SALES: passing of title.

may relate either to the identification of property or to its kind or quality—as where the purchaser reserves the right of inspection to determine whether the property is such as he bargained for. *Semple v. Lumber Co.*, 142 Iowa, 586; *Bogy v. Rhodes,* 4 G. Greene, 133.

As a rule, in a contract of sale upon approval or test, title does not pass until approval is given or the test had. *Davis Co. v. McHugh,* 115 Iowa, 415.

But there may be a sale with an option in the purchaser to rescind and return, and in such cases the general rule is that the title passes upon delivery. *Wind v. Iler,* 93 Iowa, 316. In other words, the mere right of inspection does not, as a rule, modify the general rule that title to personal property passes upon delivery and acceptance by the buyer. *Wind v. Iler,* 93 Iowa, 316; *Hunt v. Wyman,* 10 Mass. 198. If nothing more appears than a right to rescind and return the property, title passes upon delivery and acceptance by the buyer. See cases hitherto cited.

After all, however, the real question is the intent of the parties manifested by the terms of the written contract, if there be one, and the acts and conduct of the parties with

2. SAME: intent of parties: evidence.

reference to the transaction, and as a rule this is a question of fact for court or jury. *Wind v. Iler,* 93 Iowa, 316; *Welch v. Spies,* 103 Iowa, 389; *McClung v. Kelley,* 21 Iowa, 508; *Clark v. Shannon,* 117 Iowa, 645.

The trial court made a finding of facts and determined that the title to the generator did not pass until it was fully tested, and that, as no such test was made, the loss should fall upon plaintiff. It also found that defendant did not waive the test and is not estopped from insisting thereon because of the use of the generator after the partial test, and the only question for our determination is: Shall these findings be disturbed? It will be noted that, by the terms of the contract, plaintiff agreed to furnish all apparatus for a test, and that 50 percent of the purchase price was withheld until the material was tested out, and that this payment was dependent upon the material being tested. This clause in the contract is full of significance. Again, the parties undertook by contract to limit the effect of the acceptance of the generator. Again, just before the materials were finally put in place, one acting for the town wrote plaintiff the following letter: "The Wesco Supply Company, St. Louis, Mo.—Gentlemen: We beg to advise that you will be required to run a test upon the 50 K. W. generator supplied to Allerton, Iowa, on the 31st of September, as required by the terms of your contract with the city. Kindly advise us that your man will be on hand before or by that date, and that he will secure and provide the necessary resistances, etc., for the test. Failure to make this test on this date, will necessitate the making of the same by the undersigned, and whatever costs is incurred by the writer in making the test, will be deducted from the contract price of the equipment, if the same is found to be satisfactory. Kindly see that the discharge resistance noted in our recent letter to you is on hand by this date, as we are to close our connection with this work at this date, and such matters must be cleaned up. Very truly yours, By L. G. Knapp."

On the whole we think the trial court was justified in finding that it was the intent of the parties that title should not pass to the town until a full and complete test

was made, and that defendant did nothing to prevent that test. It is true that the goods were put in possession of the defendant, but it seems that this delivery was subject to the condition that the property should meet a subsequent test before final acceptance by the buyer. In this respect the case is much like *Cornell v. Clark,* 104 N. Y. 451 (10 N. E. 888); *Kitson Co. v. Holden,* 74 Vt. 104 (52 Atl. 271); *Charter Co. v. Bank,* 54 Neb. 743 (74 N. W. 1070).

The trial court was justified in finding that there was a sale upon condition and title did not pass until upon a test it was ascertained that the property was of the kind bargained for. Such seems to have been the construction put upon the transaction very like the one here before us by the Supreme Court of the United States in *Pope v. Allis,* 115 U. S. 363 (6 Sup. Ct. 69, 29 L. Ed. 393). See, also, *Sturm v. Boker,* 150 U. S. 312 (14 Sup. Ct. 99, 37 L. Ed. 1093); *Pike Electric Co. v. Richardson,* 42 Mo. App. 272; *Rumpf v. Barto,* 10 Wash. 382 (38 Pac. 1129); *Kahn v. Klabunde,* 50 Wis. 235 (6 N. W. 888); *Mowbray v. Cady,* 40 Iowa, 604.

The case is not one of sale or return, but really one of conditional sale, and in our opinion the trial court was right in finding that title did not pass until a final test was made or defendant did something to prevent the test. The cases upon these propositions are very numerous and will be found collected in 35 Cyc. pages 288, 289, to which reference is made. Defendant did nothing to waive the performance of the condition, and there is no such showing as amounts to an estoppel upon it.

It follows that the judgment must be, and it is— *Affirmed.*