[No. 24179. Department Two. February 14, 1933.]

L. A. ROSS, *Respondent,* v. ANNIE JOHNSON, *as Guardian of Rogers R. Hoseph, a minor, Appellant,* OSNER & MEHLHORN, INC., *et al., Defendants.*[1]

[1]Reported in 19 P. (2d) 101.

*Morris & Dubuar,* for appellant.

*Fred H. Dore,* for respondent.

STEINERT, J.—This action was brought by plaintiff against defendant Annie Johnson, as guardian of her minor son, and Osner & Mehlhorn, Inc., a corporation, to compel the cancellation of a note and the satisfaction of a mortgage executed by plaintiff to the order of Osner & Mehlhorn, Inc., and thereafter assigned to defendant Johnson. By way of affirmative defense, the defendant Johnson sought to recover upon the note and to foreclose the mortgage. The cause was tried to the court, without a jury, resulting in a judgment

canceling the note as paid and directing that the mortgage be satisfied of record. The defendant Johnson has appealed.

The facts, which are either admitted by the pleadings or else undisputed in the evidence, are these: On September 5, 1924, respondent executed and delivered to Osner & Mehlhorn, Inc., his promissory note for $1,650, payable to the order of Osner & Mehlhorn, Inc., at its office, three years after date, and bearing a stamped endorsement on its face to the effect that the note could be paid off at any time after one year from date thereof and before maturity, provided that the maker paid three months' advance interest. As security for the note, a mortgage on certain real estate owned by respondent was executed on the same day and recorded on September 6, 1924. The note and mortgage were assigned to appellant, as such guardian, by a separate instrument executed by Osner & Mehlhorn, Inc., on September 8, 1924, and duly recorded on September 19, 1924; the note, however, bore no endorsement indicating assignment or transfer. On November 22, 1926, nearly a year prior to its maturity, the respondent paid to Osner & Mehlhorn, Inc., the amount of the principal, together with all interest owing on the note. The principal amount, however, was never transmitted to appellant, the holder and owner of the note and mortgage at the time, nor were those instruments ever surrendered, cancelled or satisfied by her.

The peculations of August Mehlhorn, Jr., vice-president of Osner & Mehlhorn, Inc., are now a matter of common knowledge, and also of frequent record in this court. This case is but another instance thereof.

Subsequent to November 22, 1926, the day on which respondent made his principal and final payment, and up to June 5, 1930, Mehlhorn continued to remit to ap-

pellant the interest installments as he had customarily done before. Mehlhorn had represented to appellant that the maker of the note and mortgage desired them extended, and this was agreeable to appellant. Subsequent to June 5, 1930, Mehlhorn absconded, and has not been heard from since.

Osner & Mehlhorn, Inc., becoming insolvent, a receiver thereof was appointed; the receiver subsequently became the trustee in bankruptcy of that company. Thereafter, on November 29, 1930, this action was brought by respondent for the purpose of having the note and mortgage cancelled and satisfied, as already stated. Other facts, falling in the same category of admissions or without dispute, will be stated in the course of our discussion.

Four questions are presented upon this appeal, all of them being in the nature of conclusions drawn from the evidence, by the court, adversely to appellant. The first involves the question whether the recording of appellant's assignment charged respondent with notice that appellant was the owner of the mortgage from the date of recording the assignment. The trial court took the position that such recording gave notice only to those who *dealt with the property*, and not to one who "paid off the note and mortgage."

The statute in force at the time that the assignment was recorded provided that such assignment shall be valid as against bona fide purchasers from the date of filing for record, and that, when so filed, it shall be notice *to all the world*. Rem. Comp. Stat., § 10596. Construing that statute, we have held the law to be contrary to the conclusion reached by the trial court. *Seattle National Bank v. Ally*, 66 Wash. 610, 120 Pac. 94; *Honefenger v. Green*, 145 Wash. 39, 258 Pac. 840; *Price v. Northern Bond & Mortgage Co.*, 161 Wash. 690, 297 Pac. 786. In the case last cited, we quoted

with approval the following language from 1 Jones on Mortgages (8th Ed.), § 596:

"The effect of recording an assignment is not only to protect the assignee against a subsequent sale of the mortgage by the apparent holder of it, but also to prevent a wrongful discharge of it by the mortgagee."

The effect of the above statute, as we have previously construed it, was to charge respondent with notice, as of the date of the recording of the assignment, that the appellant had become the owner of the mortgage.

The second conclusion reached by the court was that, when Mehlhorn, as the officer of Osner & Mehlhorn, Inc., received payment of the principal of the note secured by the mortgage in question, he received it as the agent of the appellant. Respondent's evidence was that, when he made the payment, he took a receipt therefor, but at the same time also demanded the note. He was told by a representative of Osner & Mehlhorn, Inc., that it was held by a client of that office who was then out of town, but that it would be obtained in a few days and would then be mailed to him. A few days later, he returned to Mehlhorn's office and again requested the note, and received the same promises as before. A few weeks thereafter, respondent's sister made several attempts to get the note, but was told that it had gotten misplaced. From that time on, respondent made no further effort or inquiry concerning the note.

The evidence is undisputed that, although appellant had made several investments through the office of Osner & Mehlhorn, Inc., over a course of years, she, in each instance, exercised her own judgment in the purchase of the particular security. Sometimes, at the request of Mehlhorn, and at other times without it, she would go to his office when she had money to

invest, and after some discussion and inquiry, would select a particular mortgage and buy it. She never turned her funds over to Osner & Mehlhorn, Inc., outright, for investment by that company. She herself looked over the title insurance policies, attended to the recording of the assignments, and invariably kept the notes in her own possession.

As a matter of convenience and accommodation to borrower and lender, Mehlhorn would collect the interest and remit the same to the lender, in this case the appellant. On one or two occasions, over a course of dealing covering a period of about twelve years, Mehlhorn collected, or rather received, the principal on a particular note and mortgage and immediately paid it to appellant. Those collections, however, were without any previous knowledge by, or authority from, her, and always while the particular note was still in her possession. Whenever the principal of a note was to be paid, appellant, in response to Mehlhorn's communication, would bring in the note, and would turn it over on payment to her of the money. She was never advised of the payment of the principal made by the respondent in this case.

We held in *Kucher v. Scott*, 96 Wash. 317, 165 Pac. 82, that the collection of interest, from time to time, by a third party who was the original payee thereof, did not of itself authorize such party to collect the principal, even though it was made payable at his office, unless he held possession of the note. In this connection, it must be conceded, for we have recently so held, that the fact of possession or non-possession of the note is not wholly determinative. It may be evidence of the authority, or lack of authority, to collect it, but not conclusive proof. *Delaney v. Nelson*, 132 Wash. 472, 232 Pac. 292; *Pfeiffer v. Heyes*, 166 Wash. 125, 6 P. (2d) 612.

In *Koppler v. Bugge,* 168 Wash. 182, 11 P. (2d) 236, decided since the entry of judgment herein, we took a more definitive and a somewhat more stringent position; and by adopting certain conclusions of the trial court therein, announced the rule that, when one advances money to an alleged agent of the holder to satisfy a mortgage and the notes which it secures, it is his duty, at his *peril,* to see that the person to whom he pays as agent is either (a) in possession of the instrument, or (b) has special authority to receive payment, or (c) has been represented by the owner and holder of the security to have such authority. We further stated in the opinion in that case that the burden of proving such agency must be borne by the party who asserts it.

These several decisions to which we have just referred are not out of harmony with each other, for, even though the lack of possession of the note be not conclusive, yet the one presuming to make the payment thereon still has the burden of showing specific authority of the other to receive it, or else that he has been represented by the owner and holder of the security to have such authority.

It is, of course, true that agency may be inferred from the course of dealing or conduct between the parties, or may be established by estoppel. It was upon these principles that the trial court took his second position. The court felt that, because appellant had had a course of similar transactions with Osner & Mehlhorn, Inc., over a period of twelve years, frequently receiving installments of interest and in one, or at most two, instances principal payments, she must be held to have conferred authority on Mehlhorn, or Osner & Melhorn, Inc., to collect the principal in the instant case.

In *Koppler v. Bugge, supra,* the course of dealing

was far more extensive than in this. There, it had been carried on over a period of from ten to twenty-six years, and the transactions were much more numerous than here. We held, however, that such course of dealing did not establish agency in Mehlhorn to collect principal. Although it appears from the opinion in that case that, as to respondent Koppler, there was no authority to collect the principal, and none collected, the record of the case also discloses that, as to other respondents, there was such authority. Under all of the accompanying circumstances, however, those respondents were nevertheless permitted to recover.

In *Pfeiffer v. Heyes, supra,* the holder of the note and mortgage had had many dealings with Osner & Mehlhorn, Inc., and we there held that the latter was constituted an agent of the owner because of the course of conduct over a period of fourteen years, during which the agent had been permitted to collect principal as well as interest, grant renewals, make re-investments, and to look after the payment of taxes and insurance. Those facts distinguish the *Pfeiffer* case from the case at bar.

In the present case, while lack of possession of the note by Osner & Mehlhorn, Inc., is not to be considered conclusive, still it is evidentiary upon the question of authority to collect. Under the circumstances, the burden still rested upon respondent to show either that appellant had conferred special authority on Osner & Mehlhorn, Inc., to receive the money, or else that the appellant had represented that that company had such authority. Evidence of any such representation was wholly lacking, and the course of dealing not only did not show that the company had specific authority to collect the principal, but, in our opinion, showed the very contrary.

■ The trial court animadverted upon the books of account kept by Osner & Mehlhorn, Inc., which showed various transactions between it and appellant over a long period of years. The court thought that those books of account presented a state of facts establishing agency. The account on its face showed a series of running transactions indicating that principal and interest were being collected, some of which were remitted to appellant and other re-invested for her. The evidence, however, further shows that the account was the private account of that company, kept for its own purpose and in its own way; that appellant never saw it, never knew that it existed, and that she never carried any balance of cash with the company. Of course, in the absence of any participation in the method of bookkeeping, or of any knowledge thereof, appellant would not be bound by the private account of that company. The system of bookkeeping used by Osner & Mehlhorn, Inc., in the case of *Koppler v. Bugge, supra,* was the same as that employed here, and showed a much more extensive course of dealing than was evidenced in the present case; and yet it was held not sufficient to constitute agency.

A similar method of accounting was shown to have been used in the case of *Nicklisch v. Flynn,* 168 Wash. 310, 11 P. (2d) 1066, decided since the entry of judgment herein, and which also arose out of Mehlhorn's peculations, and it was there held not to establish agency under the circumstances of the case. We reach the same conclusion here that, under the evidence, despite the method of private accounting of Osner & Mehlhorn, Inc., neither that company nor Mehlhorn himself was the agent of appellant in collecting the principal of the note.

■ The next conclusion reached by the trial court

was that the note was never negotiated to appellant, that she was, at most, an assignee thereof, and that, as such, she took it subject to all defenses that might have been raised against the original payee. Granting that the note was never negotiated to appellant in accordance with Rem. Rev. Stat., §§ 3443 and 3422, and assuming, for the sake of argument, that, in her hands, the note became subject to the same defenses as though it were non-negotiable, as provided in Rem. Rev. Stat., § 3449, nevertheless we say here, as we did in the recent case of *Kiley v. Bugge,* 165 Wash. 677, 5 P. (2d) 1038, that those statutes do not determine the disposition of this case. Another rule is here applicable, which, being applicable, becomes more potent, and in its potency suspends the operation of those sections of the statute. That rule underlies the basis of the trial court's fourth conclusion, although we think that there was an erroneous application of the principle on which the conclusion was based.

The rule to which we refer, and which we discuss under the fourth and final conclusion reached by the trial court, is this: Where a loss which is occasioned by the wrongful act of a third party must fall upon one of two innocent persons, the one whose conduct made the loss possible must bear it. We have quoted the rule in the language used by this court in *Kiley v. Bugge, supra,* and reaffirmed in *Nicklisch v. Flynn, supra.*

The appellant here did all that she was required to do. The respondent did not. The appellant duly placed her assignment of record, retained the note in her possession, and gave Mehlhorn no authority, either specific or by implication, to act for her in its collection. The respondent executed and delivered to Osner & Mehlhorn, Inc., his promissory note secured by a mortgage, both of which were assignable, making

it possible for those instruments to come into the hands of an innocent purchaser. Thereafter, respondent made payment of the principal to Mehlhorn with the knowledge that he should have his note returned, and with the further knowledge that it was then held by another. He had actual knowledge of the custom of recording mortgages and assignments thereof, and constructive notice by the record that the assignment had been recorded. He trusted Mehlhorn to make the proper application of the money without assuring himself that Mehlhorn had authority to receive it or had made proper application of it. It was his acts and his negligence that made the results possible. Upon him, therefore, even though innocent, must fall the loss.

A reading of the record in this case and the knowledge of what others formerly in this court contain, cannot result otherwise than in arousing a just resentment against one who, by his systematic embezzlement, has victimized many innocent people. Unfortunately, however, we are called upon only to decide who, as between innocent persons, has the prior right. Those rights are presented for adjudication, and in determining them we must necessarily, though regretfully, decide whose fault occasioned the loss, and who, therefore, must suffer the consequences.

The judgment is reversed, with direction to the court to dismiss the complaint and to enter a judgment for appellant upon the note and for a foreclosure of the mortgage securing it. This will, of course, be without prejudice to any rights or claims which respondent may have against Osner & Mehlhorn, Inc., its receiver or trustee in bankruptcy.

BEALS, C. J., TOLMAN, and MAIN, JJ., concur.